ORDERED.

Dated: September 18, 2020

_Karen S. Jennemann_
Karen S. Jennemann
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**Orlando Division**
www.flmb.uscourts.gov

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| GLOBAL ASSET RENTAL LLC. | ) | Case No. 6:20-bk-04126-LVV |
| | ) | |
| Debtor. | ) | |

**FOURTH INTERIM ORDER (A) AUTHORIZING DEBTOR TO USE CASH COLLATERAL ON AN EMERGENCY BASIS PENDING A FURTHER INTERIM HEARING; (B) GRANTING ADEQUATE PROTECTION AND PROVIDING SECURITY AND OTHER RELIEF TO AGENT AND THE LENDERS; AND (C) SETTING A FURTHER INTERIM HEARING**
**PURSUANT TO BANKRUPTCY RULE 4001**

THIS CASE came before the Court for hearing on September 14, 2020 at 2:00 p.m. (the "Hearing") to consider the Motion of Global Asset Rental LLC, a Nevada limited liability company (the "Debtor") requesting that this Court enter this fourth interim order (this "Fourth Interim Order") authorizing the Debtor (a) to use certain Cash Collateral pending further interim

hearing; (b) to grant adequate protection and provide security and other relief to White Oak Global Advisors, LLC ("White Oak"), in its capacity as administrative agent ("Agent") to the lenders party to Prepetition Credit Agreement ("Lenders"), and (c) to set a further interim hearing in accordance with Bankruptcy Rule 4001 (the "Motion") (D.E. No. 32).  Unless otherwise indicated, all capitalized terms used as defined terms herein have the meanings ascribed thereto in Exhibit A attached hereto and by this reference are made a part hereof.  The Court, having entered Interim Orders on the Motion (D.E. Nos. 68, 98 and 115), having reviewed the Motion and the Budget attached hereto (the "Budget"), having considered the arguments of counsel at the Hearing, having been informed that the Debtor and the Agent have agreed to the terms of this Fourth Interim Order, having been informed that the Official Committee of Unsecured Creditors (the "Committee") has been formed and has agreed to the terms of this Fourth Interim Order, and otherwise for the reasons stated in open Court, it is

**ORDERED:**

1.   The Emergency Motion is Granted on a Further Preliminary Basis as set forth herein.

2.   Notice of the Motion and Hearing.  Notice of the Motion and Hearing was adequate and appropriate in the current circumstances of this Case as contemplated by 11 U.S.C. § 102(a) and Fed. R. Bankr. P. 4001(b)(2).

3.   Authorization to Use Cash Collateral.  The Debtor is authorized to use Cash Collateral through September 20, 2020 solely (a) in accordance with the terms and provisions of this Fourth Interim Order, and (b) to the extent required to pay, when due, those expenses enumerated in the Budget and related footnotes. Except as authorized in this Order or further order of the Court, the Debtor is prohibited from using Cash Collateral.  While the Debtor is authorized to pay the expenses provided in the Budget, the Court does not make any finding as to the

reasonableness of the compensation paid to any of the Debtor's employees. For the avoidance of doubt, the Debtor is not authorized to pay the management fee to Echodog pending further order of the Court.

4.  <u>Debtor Obligations</u>. The Debtor shall perform, in a timely manner, all obligations of a debtor-in-possession required by the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the orders of this Court.

5.  <u>Procedure for Use of Cash Collateral</u>. Debtor shall deposit all cash now or hereafter in its possession or control into the Authorized Account provided that the Debtor may maintain not more than $100,000 in the TransferWise "multi-currency account". All cash of the Debtor (including any cash maintained in the TransferWise "multi-currency account") shall be deemed to constitute proceeds of the Aggregate Collateral and subject to Agent's liens granted under the Prepetition Documents and this Order.

6.  <u>Adequate Protection of Interests of Agent and the Prepetition Lenders in the Prepetition Collateral and the Prepetition Liens.</u> Agent and Lenders have consented to the terms of this Order and are entitled to adequate protection as set forth herein and to the extent required under Code §§ 361, 362 or 363 (including for any decrease in the value of such interests in the Prepetition Collateral from and after the Filing Date). As part of Agent and Lenders adequate protection, on August 18, 2020, Debtor shall deliver to Agent, with a copy to counsel to the Committee, (A) an updated weekly operating budget for the upcoming period to be agreed upon by the Debtor and the Agent/Lenders, with input from the Committee (in substantially the same format as the Budget), (B) a Variance Report with respect to period ending on the immediately preceding Sunday, (C) a report (in the format previously provided by the Debtor) that sets forth the number of kegs and pallets owned by the Debtor and the geographic location of such kegs and

pallets, in each case, as of the immediately preceding Sunday and (D) account receivables and account payable aging reports, in each case, as of the immediately preceding Sunday

7. <u>Replacement Liens.</u>  Agent is hereby granted a perfected post-petition lien against Postpetition Collateral to the same extent and with the same validity and priority as its pre-petition lien (the "<u>Replacement Liens</u>"), which Replacement Liens shall be properly perfected, valid and enforceable liens without any further action by Debtor or Agent and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments, and shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Case.  Notwithstanding the foregoing, the Debtor is authorized to and shall execute and deliver to Agent such financing statements, mortgages, instruments and other documents as Agent may request from time to time in respect of the Replacement Liens.

8. <u>Allowed Code § 507(b) Claim.</u>  If and to the extent the adequate protection of the interests of Agent and Lenders in the Prepetition Collateral granted pursuant to this Order proves insufficient to compensate for any diminution in the value of Agent's and Lenders' interest in the Prepetition Collateral as of the Filing Date, then Agent and Lenders shall have an allowed claim in accordance with Code § 507(b), in the amount of any such insufficiency, with priority over:  (1) all costs and expenses of administration of the Case that are incurred under any provision of the Code; and (2) the claims of any other party in interest under Code § 507(b) (the "<u>Super-Priority Claim</u>").  Said Super-Priority Claim shall not have priority over the Committee Professional Carve-Out (defined below) or any pre-petition retainers held by the Debtor's professionals to be used to pay the allowed fees and costs of the Debtor's professionals upon the approval of the Court.

9. <u>Enforcement</u>.  The court shall retain jurisdiction to enforce the terms of this Order.

10. <u>Notice of Further Hearing.</u>  The further hearing to consider the entry of a further interim order authorizing the use of Cash Collateral is scheduled for **September 21, 2020 at 2:00**

**p.m**., and may be continued from time to time without further notice other than that given in open court.  The Debtor is directed to immediately serve a copy of this Second Interim Order by first class mail, postage prepaid, on counsel for Agent, counsel to the Committee, the Debtor's other secured creditors, Debtor's twenty (20) largest unsecured creditors, and the United States Trustee, which service shall constitute adequate and proper notice of the further interim hearing.

11. <u>Without Prejudice</u>.  This Order is without prejudice to (i) any subsequent request by a party in interest for modified adequate protection or restrictions on use of cash collateral or (ii) any other right or remedy which may be available to the Debtor, secured creditors or other parties in interest.

12. <u>Creditors' Committee</u>: The provisions of this Order are without prejudice to the right of the Committee to challenge the validity, priority, or extent of any lien(s) asserted against cash collateral.

###

Attorney Paul J. Battista, Esq. is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of this order.

# EXHIBIT A

# DEFINED TERMS

1. ***Aggregate Collateral***.  Collectively, the Prepetition Collateral and the Postpetition Collateral.

**2. *Authorized Account*.** The Debtor-in-Possession checking account at Truist Bank, f/k/a SunTrust.

3. ***Budget***.  The weekly operating budget of the Debtor through October 11, 2020 setting forth all forecasted cash, receipts, disbursements, fees and expenses.  The Budget is attached hereto as <u>Exhibit B</u>.

4. ***Case***.  The chapter 11 case or any superseding chapter 7 case of the Debtor.

5. ***Cash Collateral***.  All "cash collateral," as that term is defined in Code § 363(a), in which Agent (on behalf of Lenders) has an interest, all deposits subject to setoff rights in favor of Agent and Lenders, and all cash arising from the collection or other conversion to cash of the Aggregate Collateral, including from the sale of inventory and the collection of accounts receivable.

6. ***Code***.  The United States Bankruptcy Code (11 U.S.C. § 101 *et seq*.), as amended, and any successor statute.  Unless otherwise indicated, all statutory section references in this Order are to the Code.

7. ***Filing Date***. July 23, 2020.

8. ***Permitted Priority Liens***.  Collectively, liens in favor of third parties upon the Prepetition Collateral, which third-party liens, as of the Filing Date: (1) had priority under applicable law over the Prepetition Liens, (2) were not subordinated by agreement or applicable law, (3) were non-avoidable, valid, properly perfected and enforceable as of the Filing Date and (4) constituted "Permitted Liens" (as defined in the Prepetition Credit Agreement).

9. ***Postpetition Collateral***.  All of the real and personal property of Debtor of any description whatsoever that is the subject of the Prepetition Liens, wherever located and whenever arising or acquired, including as applicable all cash, accounts, inventory (including, for the avoidance of doubt, kegs and pallets wherever located), equipment, fixtures, chattel paper, general intangibles, all leaseholds, all commercial torts, all other "Collateral" (as that term is defined in the Prepetition Credit Agreement), and all proceeds, rents, issues, profits and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any of the foregoing.

10. ***Prepetition Collateral***.  All of the "Collateral" (as that term is defined in the Prepetition Credit Agreement) existing as of the Filing Date, and all proceeds, rents, issues, profits and products thereof.

11. ***Prepetition Credit Agreement***. That certain Loan and Security Agreement dated as of December 22, 2016, by and among Debtor, Agent and Lenders party thereto, as amended, modified and supplemented from time to time.

12. ***Prepetition Debt***.  All indebtedness or obligations under the Prepetition Documents as of the Filing Date, including all "Obligations" (as defined in the Prepetition Credit Agreement), and all fees, costs, interest, and expenses as and when due and payable pursuant to the Prepetition Documents.

13. ***Prepetition Documents***.  The Prepetition Credit Agreement and the "Loan Documents" (as that term is defined in the Prepetition Credit Agreement).

14. ***Prepetition Liens***.  Agent's (on behalf of Lenders) asserted security interests in the Prepetition Collateral under the Prepetition Documents, subject only to Permitted Priority Liens.

15. ***Trustee***.  Any trustee appointed or elected in the Case.

16. ***Variance Report***.  A detailed weekly variance report, in form and substance satisfactory to Agent, that (i) reconciles Debtor's actual performance for the period commencing on the Filing Date and ending on Friday of the immediately preceding week with Debtor's projected performance under the Budget for such period, which report shall include, without limitation, a detailed calculation of the variances between Debtor's actual and projected disbursements and collections (on a line item basis), and (ii) includes a report from management setting forth detailed explanations for variances in actual results as compared to forecasted performance for such period under the Budget.

**EXHIBIT B**

**BUDGET**

**[attached]**

**GLOBAL ASSET RENTAL, LLC**
**CASE NO. 6:20-bk-04126 - UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA - ORLANDO DIVISION**

### 4-Week Budget Through October 11, 2020 (Note 1)

**Source:** Discussions and support provided by management.
**Petition Date:** July 23, 2020

| | | Budget | | | | Total |
|---|---|---|---|---|---|---|
| Week #: | | 7 | 8 | 9 | 10 | 4 Week Budget |
| Week Ending, Sunday: | Notes | 9/20/20 | 9/27/20 | 10/4/20 | 10/11/20 | Cash Flow |
| **Keg Issue Volume** | | 2,090 | 2,090 | 1,584 | 1,204 | 6,967 |
| ***Operating Cash Inflows*** | 2 | $10,000 | $10,000 | $10,000 | $10,000 | $40,000 |
| ***Operating Cash Outflows*** | | | | | | |
| Mid-Month Payroll | 3 | $0 | $0 | $0 | $0 | $0 |
| End of Month Payroll | 3 | $0 | ($115,113) | $0 | $0 | ($115,113) |
| European End of Month Payroll & Benefits | 3 | $0 | ($27,973) | $0 | $0 | ($27,973) |
| Healthcare | 4 | ($7,767) | $0 | $0 | $0 | ($7,767) |
| Total Payroll & Benefits | | ($7,767) | ($143,086) | $0 | $0 | ($150,853) |
| Rent | 5 | $0 | $0 | $0 | ($14,979) | ($14,979) |
| Internet, Cable, & Phone | 6 | $0 | ($2,246) | $0 | $0 | ($2,246) |
| Management Fee | 7 | $0 | ($40,000) | $0 | $0 | ($40,000) |
| Transportation Costs | 8 | ($8,631) | ($8,631) | ($6,541) | ($4,973) | ($28,775) |
| Warehouse Costs | 9 | ($52,717) | $0 | $0 | $0 | ($52,717) |
| Bank Analysis Fees | | ($301) | $0 | $0 | $0 | ($301) |
| IT / Financial Systems | 10 | ($3,270) | $0 | $0 | $0 | ($3,270) |
| Keg Lease Payments | 11 | $0 | $0 | $0 | $0 | $0 |
| Insurance | 12 | $0 | $0 | $0 | $0 | $0 |
| Taxes | | $0 | $0 | $0 | $0 | $0 |
| Per Diem Assistance | 13 | $0 | $0 | $0 | $0 | $0 |
| TransferWise Fees for Transfers to SunTrust Checkin | 14 | ($1,500) | ($1,500) | ($1,500) | ($1,500) | ($6,000) |
| FX Gain/Loss | 15 | $0 | $0 | $0 | $0 | $0 |
| Contingency | | ($2,500) | ($2,500) | ($2,500) | ($2,500) | ($10,000) |
| **Total Operating Cash Outflows** | | **($76,685)** | **($197,963)** | **($10,541)** | **($23,952)** | **($309,140)** |
| **Cash Flow from Operations** | | **($66,685)** | **($187,963)** | **($541)** | **($13,952)** | **($269,140)** |
| ***Estimated Non-Bankruptcy Professional Fees*** | | | | | | |
| Domestic Non-Bankruptcy Legal Fees | | $0 | $0 | $0 | $0 | $0 |
| Ten Holter/Noordam (Int'l Non-BKC Legal Fees) | | $0 | $0 | $0 | $0 | $0 |
| Arbitrator's fee for Heineken Arbitration | | $0 | $0 | $0 | $0 | $0 |
| White Oak Global Advisors, LLC | 16 | $0 | $0 | $0 | $0 | $0 |
| Accounting fees | 17 | $0 | ($4,500) | $0 | $0 | ($4,500) |
| **Total Estimated Non-Bankruptcy Professional Fees** | | **$0** | **($4,500)** | **$0** | **$0** | **($4,500)** |
| **Net Outflows Before Bankruptcy Costs** | | **($66,685)** | **($192,463)** | **($541)** | **($13,952)** | **($273,640)** |
| ***Estimated Bankruptcy Professional Fees*** | | | | | | |
| US Trustee fees | 18 | $0 | $0 | $0 | ($4,875) | ($4,875) |
| Other | | $0 | $0 | $0 | $0 | $0 |
| Unsecured Creditors Committee | 19 | $0 | $0 | $0 | $0 | $0 |
| CRO & KapilaMukamal | 20 | $0 | $0 | ($55,000) | $0 | ($55,000) |
| BKC noticing expenses | 21 | $0 | ($12,500) | $0 | $0 | ($12,500) |
| **Total Estimated Bankruptcy Professional Fees** | | **$0** | **($12,500)** | **($55,000)** | **($4,875)** | **($72,375)** |
| **Net Cash Flow / (Deficit)** | | **($66,685)** | **($204,963)** | **($55,541)** | **($18,827)** | **($346,015)** |
| **Cash Balance** | | | | | | |
| Estimated Beginning Cash Balance | 22 | $352,981 | $286,296 | $81,334 | $25,793 | $352,981 |
| + Change in Cash | | ($66,685) | ($204,963) | ($55,541) | ($18,827) | ($346,015) |
| = **Ending Cash Balance** | | **$286,296** | **$81,334** | **$25,793** | **$6,966** | **$6,966** |

**SEE ACCOMPANYING NOTES**

**GLOBAL ASSET RENTAL, LLC**
**CASE NO. 6:20-bk-04126**
**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

## Budget Notes

**Source:** Discussions with and support provided by management.

| # | Note |
|---|---|
| 1 | The COVID-19 pandemic adds to the uncertainty governing the ability to estimate and forecast the revenues and expenses. The Debtor's business has almost entirely disappeared (volumes down over 95% YOY for 5 straight months) due to the closure of restaurants and bars in the United States and Europe where the majority of the Debtor's business is conducted. This is compounded by unprecedented lower demand for kegged beer stemming from a) continued mandates for social distancing and occupancy caps in bars and restaurants where kegged beer is served and consumed, b) the slow reopening of the United States and other countries around the world, and c) the resurge in recent COVID-19 cases causing a reversal of the reopening process including a second shutdown of bars and restaurants.  As a result, the projection of revenues and variable expenses are difficult to predict. It is not possible to incorporate the impact of the everchanging circumstances of the COVID environment. The unpredictability of the current situation on a global stage may impact the budget beyond the Debtor's expectations. |
| 2 | The Debtor's operating cash inflows consist of pre-petition AR collections, revenue from keg rentals and associated incremental fees and deposits from keg rentals (net a reserve for potential return liabilities). |
| 3 | The current employee roster consists of 12 employees: 9 U.S. based (including three executives); one based in Canada; and two employees based in Europe. Starting with the August 2020 payroll, all employees will be paid on a monthly basis on the last day of the month (August 31, 2020). The payroll is managed by a third party payroll service and the actual payroll funding is transferred to the service several days prior to the disbursement to the employees. |
| 4 | The healthcare premiums paid by the company for the employees and executives. |
| 5 | The rent expense is for the corporate office based in Orlando, FL. |
| 6 | The internet, cable and phone expenses are related to the Orlando, FL corporate office. |
| 7 | The management fee is between the Debtor and Echodog (the "Manager"), a Florida corporation, for the purpose of providing professional managerial services based on the Manager's specific experience in the asset rental industry. Echodog is owned by the CEO of the Debtor. The Management Fee is accruing and is payable monthly on the same day that the company pays ADP to fund its end of month employee payroll. The Management Fee payment is subject to Court approval. Moreover, White Oak has not consented to the use of its cash collateral for such payment. |
| 8 | Transportation costs relate to the shipment of kegs and are variable costs dependent on keg rentals and shipments |
| 9 | The warehouse costs include storage, handling and reclamation charges and are variable costs dependent on the number of kegs in each warehouse. There are a total of 21 warehouses in the United States and internationally that currently have kegs stored in their warehouses. The Budget assumes the Debtor will maintain nine warehouses based in the United States and one international warehouse based in Belgium. The Debtor is in the process of negotiating with several of its foreign warehouses concerning pre & post-bankruptcy obligations in order to gain access to its assets (kegs).  With the exception of rent on the Debtor's principal warehouse in Belgium, this budget does not presently include post-petition obligations to the remaining foreign warehouses. |
| 10 | The estimate for IT and Financial systems are monthly and quarterly fees due for the IT systems and Oracle NetSuite financial application. |
| 11 | The keg lease payments are due to New Maissoneuve.  The AP owed by Global Asset Rental to New Maissoneuve for kegs purchased was transformed into a keg lease arrangement to pay down the AP balance. The CRO, management and Debtor's counsel are reviewing the lease agreement and terms and have currently assumed no keg lease payments will be made within the budgeted time period. |
| 12 | The proposed quote for a policy insuring the kegs was $65,000, however, since a sale is scheduled to occur by September 21, 2020, the Debtor assumes the premium will not be paid and policy not bound by the expected sale date. The actual premiums due for the D&O policy were $20,956 and paid during WE 8/30/2020.  The annual premiums for general liability and excess liability have been paid and the policies coverages are in effect through 2021. |
| 13 | The Per Diem Assistance fees are an estimated cost to pay the former employees to assist with ongoing process of transitioning to another financial system (NetSuite) that was initiated prior to the petition date and employee wind down. |
| 14 | The TransferWise Fees for Transfers to SunTrust Checking are fees incurred to transfer funds in accordance with the ¶6 of the Interim Order for Use of Cash Collateral filed on August 5, 2020 [DE 68]. In which the Debtor cannot exceed a $100,000 balance in the TransferWise bank account. |
| 15 | The FX Gain/Loss is the result of funds received from customers paid in Euros and deposited in the TransferWise bank account and subsequently transferred to SunTrust and converted to US dollars. |

**GLOBAL ASSET RENTAL, LLC**
**CASE NO. 6:20-bk-04126**
**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

### Budget Notes

**Source:** Discussions with and support provided by management.

| | |
|---|---|
| 16 | This estimate relates to funding for the legal fees of White Oak professionals in lieu of adequate protection. |
| 17 | Estimate for the accounting firm to prepare the Debtor's 2019 tax returns, subject to Court approval. |
| 18 | The fees due to the US Trustee are calculated pursuant to a rate table on disbursements, and are payable quarterly and based on the monthly operating reports filed with the Bankruptcy Court. The first quarterly payment will be due in October 2020. |
| 19 | The Debtor funded $75,000 ($25,000 for three weeks) as a carveout for the Unsecured Creditors Committee to the Baker Hostetler/Elizabeth Green Trust account. The reserve can also be used to fund operations to effectuate the sale of the assets. |
| 20 | Estimate for the CRO and KapilaMukamal professional fees in excess of the retainer for managing the sale process. |
| 21 | Estimate for the bankruptcy noticing expenses. |
| 22 | The estimated beginning cash balance as of September 14, 2020 includes only estimated expenses going forward. The budget and ending cash balance as of October 11, 2020 does not reflect accrued administrative claims that are subject to allowance by the Court. |

The Management and CRO from time to time makes written or oral forward-looking statements concerning expectations, beliefs, plans, objectives, future events or performance and underlying assumptions and other statements that are not historical facts. These statements are "forward-looking statements." Generally, the inclusion of the words "believe", "could", "should", "estimate", "expect", "intend", "anticipate", "will", "plan", "target", "forecast" and similar expressions identify statements that constitute "forward-looking statements." All statements addressing developments that Management and the CRO expect or anticipate will occur in the future, including statements relating to values, future financial condition, assets, real property and timing of their disposition, as well as statements expressing optimism or pessimism about future results, are forward-looking statements. The forward-looking statements are based upon Management and the CRO's then-current views and assumptions regarding future developments and are applicable only as of the dates of such statements. By their nature, all forward-looking statements involve risks and uncertainties. Management and the CRO assume no obligation to update or review any forward-looking information to reflect actual results, changes in assumptions or changes in other factors affecting forward-looking information, whether as a result of new information, future events or otherwise. There can be no assurance that the Management and the CRO have correctly identified and appropriately assessed all factors affecting the Company and its assets. For these reasons, you are cautioned not to place undue reliance on any forward-looking statements.